23-5928 U.S.A. v. Sylvester Gailes. Oral argument, 15 minutes per side. Mr. O may present with the appellant. Thank you so much. Good afternoon. May I please the court. My name is Peter O. I'm with the Federal Defender's Office here in Memphis, Tennessee and I represent Mr. Sylvester Gailes. I begin oral argument by noting two factors that do limit what Mr. Gailes may now assert in good faith on this appeal. The first is rather obvious. Mr. Gailes brought this motion to dismiss the indictment on Second Amendment grounds in April of last year. A lot has changed since then in terms of the legal landscape. Not only do we have the Supreme Court's decision in Rahimi, which the court is well aware of, but I was also aware of United States v. Eric Williams, which a panel of the circuit issued just I think under three weeks ago, August 23rd, where the panel addressed the contours of the Second Amendment as it applied in the 922g1 context. The second factor is a little bit more in the weeds, but it's equally significant. And it starts with the question. The question is, did Mr. Gailes present a facial challenge to 922g9 before the district court? Did he assert an as applied challenge before the district court? Or did he do both? I've had a chance to review the record carefully, and it's my conclusion that Mr. Gailes asserted a facial challenge only. I derived that conclusion from three things in the record. First, when we look at the motion to dismiss the written pleading itself, Mr. Gailes stated in the opening paragraph that, quote, he submits that 922g9 is facially unconstitutional under the Second Amendment. I can give the point citation to the panel if that's required. Also, the parties appeared before the district court for oral argument on May 24th, 2023. About midway through oral argument, the district court inquired, quote, we're not going back to figure out what he did to get a domestic violence conviction. And counsel at that point confirmed that they were not going to delve into the specific facts of the prior conviction. A strong indicator, again, that the defense, Mr. Gailes, would adhere to a facial challenge rather than an as applied challenge. And I think the nail in sort of the linchpin to that, this observation is the following as well. When Mr. Gailes did enter his guilty plea, it was an unconditional open plea. That is, it came with no conditions or agreements or concessions by the government. It was just an open acknowledgement of his guilt to the 922g9. The facial challenge to the Second Amendment, or the facial challenge to the statute, was preserved under class versus United States, where the Supreme Court ruled that facial challenges to under the Second Amendment would be preserved, notwithstanding a guilty plea. But I believe that it's sort of the well settled law in this circuit, as well as others, that as applied constitutional challenges are effectively waived when an individual enters an open plea. So based on those three considerations, it's my conclusion that the second factor that limits our discussion, or at least the panel's discussion here, is that there was a facial challenge only before the district court. And that appears to be what's before this panel now. As we move then to the Bruin analysis itself, I think we understand that there's a familiar now or a now familiar two step analysis. First, whether or not the Second Amendment's text covers the challenge statute. And if so, what the government bears its burden to demonstrate that the challenge statute is consistent with our nation's historical understanding and historical regulation of such statutes. United States versus Williams is my estimation has answered the first question affirmatively for Mr. Gales. In Williams, the Sixth Circuit held that even felons, convicted felons of all stripes, still remain as part of the people for purposes of the Second Amendment. And that should apply to Mr. Gales as well. Also, the Second Amendment's text plainly covers section 922 g nine. The Second Amendment provides that the right to keep in their arms shall not be infringed. 922 g nine prohibits individuals who have a prior conviction for misdemeanor domestic violence from possessing a firearm. So it's a perfect match. We then go to the second step of the Bruin analysis. And this is where first Rahimi and then the fact that it's a facial challenge come into sharp focus. First, Rahimi now teaches us that when we're thinking about the second step of the analysis, what we have to consider is whether the challenge statute is consistent with the principles underpinning our nation's history of regulating firearms. So Rahimi effectively broadened or placed at a greater level of generality this step of the analysis. And when we consider that it's a facial challenge that Mr. Gales brought before the district court and now presents to this panel, the question becomes whether there are any set of circumstances whatsoever under which 922 g nine can be consistent with the historical understanding. Rahimi, let me let me let me interrupt you for just a second. Judge Griffin, we seem to have lost the picture for Judge Moore. Is she still connected? I am still connected. Can you hear me? Okay, there we go. Thank you. Yeah. Um, so I was going to ask you the question. Um, how do we distinguish 922 G nine from 922 G eight, which was involved in Rahimi? I think there is a very sharp point of distinction. So in 922 G eight, we have a situation where the statute provides that as long as an individual is subject to a restraining order where a judge has made a finding that he has a credible threat, an imminent threat of physical violence to another individual, that that person may be disarmed, at least temporarily. We see the scope of 922 G nine being substantially broader than 922 G eight, and we spell that out in our supplemental brief that the court ordered us to, um, file. First, we know that for an individual to be subject to 922 G nine, that individual's domestic violence conviction may not have been violent as we might ordinarily understand that term. We get that from Castleman versus United States, which is Supreme Court case that we cite in our brief. We also know that under 922 G nine for all intents and purposes, and certainly there are some statutory carve outs. That statute operates effectively to permanently disbar individuals, not temporarily from possessing a firearm. Uh, and so that too, I think, is another distinguishing factor. But that would be true then in the G one context as well, right? That it's a permanent bar. That's correct, Your Honor. And I think where the rubber meets the road is this in Williams. The panel was very clear that Congress does have the authority to disarm classes of individuals based on what Congress believes is dangerous. So long as each member of that class has a reasonable opportunity to demonstrate that he or she is not in fact dangerous. So when I see 922 G nine in the scope and breadth of 922 G nine, I do foresee opportunities for particular individuals with particular facts to be able to launch an as applied challenge to 922 G nine applies to them. But I think going back to one of the things that, um, we recognize limits our arguments on appeal. There was no as applied challenge that was raised before the district court. Would your client be able to raise such an as applied challenge on a ineffective assistance of counsel claim in a 22 55 later on? Um, I believe that it would be very difficult for Mr Gales to raise that challenge on. I believe that's really dependent on his own personal situation. I'm sure that the government will have a lot to say about that, but I don't see that ineffective assistance is really at issue here. I do believe that counsel below before the district court represented Mr Gales effectively, zealously on with much bigger. Any questions from the panel? I see your time is running out. Well, I'm not quite sure I understand your argument. It seemed like in your brief you were you were making an as applied challenge and you really haven't told us that under all circumstances, uh, under G nine that, uh, this, this would not apply to, uh, dangerous people that present a, uh, credible, uh, threat of harm to others. I mean, can you, can you focus on, on the, uh, on the facial challenge here and tell me other other than the argument that this is permanent as opposed to temporary. How does this, how are there situations that are, that are violating? How do all situations violate the second amendment here? Your honor, the direct question answers that question would be that I think it is very difficult to mount a facial challenge to 9 22 G nine in light of both Brahimi and Williams. Okay. I mean, I agree with you there. Uh, yep. And when I brief provided the supplemental briefing, I did not have the additional clarity that Williams has now provided demonstrating that Congress can prohibit wide classes of individuals on the belief that they are dangerous as long as each individual has reasonable opportunity to rebut that presumption. So I think that would be the answer to your court. Okay, thank you. Thank you. You'll have your rebuttal time. Thank you. We'll hear from the government now. Good afternoon, your honors. And may it please the court. Regina Britton on behalf of the United States. As counsel for Mr Gales has conceded this issue does involve a facial challenge, not an as applied challenge. And for that reason, the court's question should be whether Mr Gales has met his burden of showing that there are no circumstances under which section 9 22 G nine would be valid. And frankly, he has not done so. Over 70 people are killed each month by an intimate partner in the United States. Convicted domestic abusers have been identified by Congress as presenting a special danger of misuse, thereby justifying their disarmament under section 9 22 G nine. Such would we have to do a historical analysis of whether from the beginning of our history as a country, uh, domestic abusers were, um, deprived of their second amendment rights. No, your honor. Such an analysis would be inappropriate under brewing and Rahimi. Um, ruin requires that the court look at historical analogs, not a historical and Rahimi built upon that holding and stating that the court must look at the principles that underpin our nation's regulatory firearms tradition. So it's broadened in the sense that there's no need to go back in history and find exact laws disarming domestic abusers. In fact, there are none that exist that categorically disarmed domestic abusers. If looking if there are no laws that categorically disarmed domestic abusers, then shouldn't we have to say that the second amendment protects such people? Uh, and that there can't be legislation currently on that score? No, your considering, um, whether at or near the time of the founding, there were such laws in existence. In effect, what that would be doing is requiring the government to produce a historical twin, which brewing does not require and neither does Rahimi. As to step one of Bruins analysis, the courts are called upon to look at the text of the second amendment and based on the holding in Rahimi, um, the government will no longer be arguing as an independent basis for disarmament that domestic violence abusers, those convicted of domestic violence misdemeanors, um, are excluded from the second amendments protection on the, um, on the basis of them being irresponsible. The government no longer relies on that. So the focus for this court would then be brewing step two, whether the history and tradition supports the categorical disarmament of this class of people and history and tradition does support the categorical disarmament of dangerous people. Domestic abusers have been specifically identified as falling in this class. These are people who have been convicted of a crime and that crime involves or has an element, the use or attempted use of physical force or the threatened use of a deadly weapon. This is violent, volitional conduct for which they have been convicted and it's a very narrow class of people that falls under this dangerous umbrella. How does, how does this fit within, um, the Castleman case? So the Castleman case basically holds that offensive touching, um, satisfies that physical force criteria, uh, to meet the definition of a misdemeanor crime of domestic violence under G nine. Castleman provided a few non exhaustive examples of that force. Um, it provided pushing, grabbing and causing a bruise, slapping, pulling hair, the context at which these types of offenses occur is what's very important. And I think that Castleman noted this distinction. It's the relationship between the abuser and the victim such that it's a domestic relationship, which, um, it causes the, um, the accumulation of those acts. I believe the court specifically stated that the accumulation of such acts over time can subject one's intimate part, one's intimate partner to the other's control. So these types of acts, while they may seem minor in the sense of two people who don't have a relationship, these are serious offenses in the context of those who do have that domestic relationship. And the court has noted that domestic violence often escalates over time. And these types of acts were so serious to where it resulted in gaining the attention of the legal authorities, gaining the court and the prosecution such that it resulted in a conviction beyond a reasonable doubt of a misdemeanor crime of domestic violence. So I believe that to answer your honor's question, the context is what heightens the level of severity of these offenses. And I believe that the, um, the statistics quoted in Castleman confirmed this. So are you arguing then in effect that there cannot be an as applied challenge, even if it hadn't been arguably waived here? Yes, your honor. I am making that argument. There is no room for as applied challenges in the context of section 9 22 G nine. This category of people is very, very narrow. And these are people who have been proven beyond reasonable doubt in our courts where they've been afforded substantial due process protections and constitutional protections. They've been proven to be dangerous. But how does that compare to Williams case, which said there could be as applied challenges in the 9 22 G one context as it relates to the 9 22 G one context where, um, the court addresses felons in possession of firearms. That's a much broader class of people in the context of 9 22 G nine. Here we are dealing with a specified subset of people who, like felons, have been convicted of serious offenses. But these offenses have resulted in misdemeanor convictions. Not not only are they misdemeanor convictions, but they are dangerous and violent convictions. So this narrow class of people have already been proven to be dangerous. And statistically, it shows that, of course, domestic violence escalates in severity over time, but also the recidivism rate is particularly high among domestic violence abusers. So this class of people can and should categorically be disarmed because they've proven to society that this group of people cannot be trusted with deadly force. Has any court accepted the government's view that there cannot be as applied challenges to G nine? Um, Your Honor, not that I am aware of. I'm aware of every case that's been brought before a district court where there's a 9 22 G nine challenge that every court have considered. The constitutionality has upheld the constitutionality of Section 9 22 G nine, of course, with that in mind. Well, but they tell me if I'm wrong. Have they upheld it as a matter of upheld it against a facial challenge? But has any court said? And by the way, you cannot bring in as applied challenge. Not that the government is aware of your honor. Um, as far as, um, my knowledge is concerned. I believe that it's been upheld facially. Um, and I believe and I'm not sure. I'm not sure. So I don't want to speak as a something that I'm not 100% sure of. But I do know that it's been upheld in every court in which such a challenge was brought. Thank you. And why would why would we want to address the as I applied even theoretically, given that we know nothing about what the underlying domestic violence conviction was here. There is no need to address the as applied challenge based on the fact that, excuse me, your honors, based on the fact that this particular conviction is encompassed under Section 9 22 G nine. Section 9 22 G nine doesn't punish all state misdemeanor crimes of domestic violence. What it punishes are those crimes that have an element, the use or attempted use of physical force or threatened use of a deadly weapon, a specified type of domestic violence crime. Um, so there's no need to address as applied challenges. However, the record does make clear in Mr Gail's his pre sentence report what his the nature of his prior convictions. According to unobjected two portions of his pre sentence report, he was convicted of three prior domestic assaults. Um, two of those assaults were against the same victim. Um, in 2013 he had assaulted the mother of his Children, where he punched her in the face, causing abrasions and busted her lip. In 2014 he was convicted of assaulting her again. But this time his conduct escalated. He, um, he choked her. I'm sorry. He struck her and he kicked her in the head. And then in 2020 he was convicted again of domestic assault, this time against a different victim and his conduct yet again escalated. This time he choked this woman. He beat her. He then pulled out a firearm and said, I can end it here. Mr Gales, he presents the he's right in the heartland of the class of people who should be disarmed. This dangerous class of domestic violence abusers. These are the people whose conduct escalate in severity over time. He presents that that case. And for that reason alone, Mr Gales, his argument fails because he cannot show that there are no set of circumstances under which section 9 22 G nine would be unconstitutional because it would be constitutional as applied to him. Both Rahimi and the Sixth Circuit's decision in the United States versus Eric Williams support the government's position in this case. Excuse me. And that's the position that dangerous people can categorically be disarmed. Rahimi dealt with section 9 22 G eight, which dealt with people subject to domestic violence restraining orders. And these are people who were determined by a court to present a threat to a person, some identified person or people. Williams dealt with the disarmament of felons, which is a broader claims. There is a more compelling reason to uphold section 9 22 G nine in this case. Why? Because this is distinguishable to Judge Morris question. This is distinguishable from 9 22 G eight because we're dealing with individuals who've actually been convicted of offenses. We're not dealing with people who have been accused and they're going before the court in a proceeding. This is a criminal proceeding where due process rights and constitutional rights attached, and they have had an opportunity to be represented by council, and they've been proven beyond a reasonable doubt to be guilty of a crime that has an element, the use or attempted use of physical force or the threatened use of a deadly weapon. This council. Are you saying this is a stronger case than Rahimi? Because there is a conviction as opposed to suspicion that this person, uh, may may may do harm to somebody else that actually is convicted here. Yes, violent. Yeah. Uh, I think it's a stronger case, too. Uh, so if that was sufficient for a restraining order, a restraining order didn't violate nine or G nine, a conviction or domestic violence doesn't either. Is that? Is that the argument that the same rationale applies except this is a stronger case because you actually have a conviction of domestic violence as opposed to just the adjudication that this person may commit it? Yes, Your Honor. There is, in this case of G nine, a person has already been proven to be guilty of such conduct, and they were afforded greater protections. But there is the difference between temporary in G eight versus permanent in G nine that that the person who's convicted of a G nine misdemeanor domestic violence, um, crime is never to be allowed to have a gun under G nine. Correct? Um, yes and no, Your Honor. I would state that the restrictions under section 9 22 G nine aren't necessarily permanent, permanent because there are forms of relief available to domestic violence misdemeanors in the form of pardoned, um, restoration of their civil rights or expungement. Um, but the longer term disarmament is justified under section 9 22 G eight where you have conduct that's so severe, and it's been proven beyond a reasonable doubt that these people are part of a class that is likely to reoffend. Now, G one, the felon in possession that was a permanent band, was it not? Yes, Your Honor. That was upheld. That was upheld in Williams. And was there an argument in Williams that that you could only disarm them temporarily to be consistent with the Second Amendment that a permanent band violated the Second Amendment? You don't, you know? No, Your Honor. May I? I see that I've run out of time. I continue answering the Absolutely. So 9 22 G one that is permanent disarmament of felons. It's our position that section 9 22 G nine is similar in the sense that it also resulted in a conviction. But an even more compelling reason for upholding G nine exists, um, under the statute because under the court's analysis, because we're dealing with a category of dangerous people. This is much narrower than G one. And I don't believe that there were any argument suggesting that the punishment of felons should be temporary in Williams. All right. Thank you for questions. Thank you very much. Thank you, Honors. Mr O. Rebuttal. Thank you, Your Honor. And speaking about the issue of as I have recognized that that's not before this court directly. I would disagree strongly with the government's assertion that an as applied challenge could never be brought under 9 22 G nine. Williams is very clear that when we look to history reveals that when the government's in England and colonial America, while the long disarmed groups that they deemed to be dangerous each time individuals could demonstrate that their particular possession of a weapon post no danger to the peace. That's the historical understanding in the principle that underpins Williams rationale that even if Congress has the power to say that a class of individuals may be disarmed based on Congress's belief that they're dangerous, each individual must be afforded a reasonable opportunity to demonstrate that they're not in fact dangerous. Our supplemental briefing on Rahimi talked about, I think, in theoretical terms how an individual might be able to legally start the basis for launching and as applied challenge. But if we talk in terms of practical terms, I can see perhaps in the future where this panel or another panel might be confronted with the situation where, for example, individual had a domestic violence incident when they were younger. Many years have passed able to demonstrate that they've been peaceable during those many years. And that, for example, when they're in their 30s or 40s, that they are no longer a danger as one might have originally thought when they were, say, for example, 18, 19 or 20. I can see those circumstances arising. At the same time, I acknowledge that those are not necessarily the circumstances that are before the court. And in fact, this appears to have been a facial challenge only. So I do disagree with the government's argument. And I understand that it was a bit of a side argument because there was discussion with your honors about it as far as whether or not an as applied challenge would be categorically barred. I think an as applied challenge is susceptible. I should say that 922 G9 is susceptible to as applied challenges. And I expect that we may have future litigation on that issue. And with that, I see I have still time left. I'd be happy to answer any of your questions. I have none. We thank you for your response of you. I think we have the case in mind and we appreciate your participating in the oral argument. So absent anything else from the other two judges, we thank you. And you may disconnect from the oral argument.